**THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| HUGO JIMENEZ-SOLIS<br>1126 Old Fritztown Road<br>Reading, PA 19608<br><br>Plaintiff, | CIVIL ACTION – LAW |
| vs. | *Electronically Filed* |
| TOWER HEALTH f/k/a THE READING HOSPITAL<br>420 South 5th Avenue<br>West Reading, PA 19611<br><br>Defendant. | JURY TRIAL OF 12 DEMANDED |

## COMPLAINT

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 as the action arises under Title VII, 42 U.S.C. §2000e, *et seq*. and 42 U.S.C. §1981 as well as under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §621, *et seq*.

2. Plaintiff Hugo Jimenez-Solis' EEOC Notice of Right to Sue letter was issued July 15, 2026 and is attached as Exhibit A. This Complaint was filed within 90 days of receipt of this Notice. Plaintiff cross-filed this matter under the Pennsylvania Human Relations Act, 43 Pa.C.S. §951, *et seq*., with the Pennsylvania Human Relations Commission and Plaintiff seeks the Court to deem this action filed since one year has passed since that cross-filing. This Court has supplemental jurisdiction over

the state law claims pursuant to 28 U.S.C. §1367 because they are so related to the federal claims that they form part of the same case.

3. Venue is proper in the Eastern District of Pennsylvania because at the time of the incidents in question, Plaintiff Hugo Jimenez-Solis lived in Berks County, the incidents in question occurred in Berks County, and Defendant employed Plaintiff in Berks County.

## PARTIES

4. Plaintiff Hugo Jimenez-Solis ("Plaintiff") is an adult male, residing in Berks County at 1126 Old Fritztown Road, Reading, PA 19608.

5. Defendant Tower Health f/k/a The Reading Hospital ("Defendant") is a domestic nonprofit corporation with its registered office located at 420 South 5th Avenue, West Reading, PA 19611. Defendant employed Plaintiff at 420 South 5th Avenue, West Reading, PA 19611.

## FACTUAL ALLEGATIONS

6. Plaintiff falls into the following protected classes: race: Hispanic, color: black, national origin: Colombia, ethnicity: Afro-Colombian, and age: date of birth November 26, 1971, age at the time of termination was 53.

7. Plaintiff has been discriminated against by Defendant because of race, color, national origin, ethnicity and/or age.

8. Plaintiff has been retaliated against by Defendant because of his complaint of discrimination.

9. Defendant terminated Plaintiff on January 31, 2025.

10. Defendant hired Plaintiff to be the Utilities Manager at Reading Hospital beginning April 22, 2024.

11. Plaintiff's responsibilities included overseeing several areas, including Electrical, Plumbing, HVAC shops and Energy Management. Plaintiff was also responsible for CoGeneration operations. Plaintiff was tasked with supervising staff, enforcing policies, and resolving a significant backlog of work orders.

12. Plaintiff has significant prior experience that made him suitable and qualified for the position with Defendant. Prior to working at Defendant, Plaintiff was a Facilities Operator Manager and Power Plant Supervisor for many years and was extremely qualified.

13. Out of the 20-21 workers under Plaintiff's supervision, there were no Hispanics, and the vast majority of the workers were Caucasian.

14. Plaintiff noticed that the Caucasian workers in his department were recalcitrant and resisted the changes he was making.

15. Plaintiff noticed the Caucasian employees in his department were resistant to following his instructions and failed to adhere to deadlines. Plaintiff would have to repeatedly ask for status reports and updates.

16. On August 26, 2024, Plaintiff met with his Supervisor, Director of Facilities Management Michael Rubendall (Caucasian) who issued Plaintiff an Employee Coaching Form.

17. Mr. Rubendall was told by Plaintiff that the employees did not want to follow his instructions and that the policies applied to all employees.

18. Plaintiff did not use the word "Caucasian" because it was obvious that most of the employees in his Department were Caucasian.

19. Mr. Rubendall indicated that Plaintiff needed to sell his intent or point of view to the employees.

20. Plaintiff said he was just trying to enforce policies and questioned whether he should have to "sell" as a supervisor and that employees should not violate policy.

21. Plaintiff told Mr. Rubendall that Plaintiff's decisions were being undermined.

22. Plaintiff questioned the accuracy of the allegations and complaints that had led to the coaching plan.

23. Defendant attempted to portray Plaintiff as having job performance issues.

24. However, the concerns that were raised to Plaintiff in the August 2024 Employee Coaching Form were based on hearsay and the opinions of the involved employees rather than actual policy violations.

25. Supposed comments that Plaintiff made were taken out of context and spun in a way that made his behavior appear negative.

26. Additionally, Plaintiff was falsely accused of several things during the August 2024 job coaching.

27. As a result, Defendant extended Plaintiff's probationary/trial period for an additional 90 days.

28. Plaintiff pointed out to Supervisor Michael Rubendall that the extension date of the probationary/trial period was noted incorrectly as December 27, 2024 on the job coaching form. Rubendall stated he would correct it to the correct date of November 27, 2024, however it was never corrected.

29. Plaintiff was subject to inconsistent and differing treatment because of his race and color, and Plaintiff was not treated like a supervisor with normative authority.

30. The Employee Coaching Form was originally dated August 26, 2024, and then updated August 29, 2024. The probationary/trial period extension date had not been corrected.

31. Plaintiff refused to sign the Employee Coaching Form as it seemed as if Defendant was attempting to falsely portray Plaintiff's job performance.

32. Plaintiff told Supervisor Rubendall that some of the allegations were inaccurate or exaggerated or taken out context.

33. Plaintiff told Supervisor Rubendall that he felt as if the Employee Coaching Form was not being utilized as a developmental tool but rather setting Plaintiff up for failure.

34. Plaintiff expressed to Supervisor Rubendall that the coaching plan felt retaliatory and that he was surprised to be presented with it as Supervisor Rubendall

had previously expressed satisfaction with Plaintiff's performance and had praised the initiatives he had introduced within the department.

35. Supervisor Rubendall responded that the employees had taken their concerns to Vice President of Support Services Melanie Stutzman-Ricci and that Human Resources had recommended implementing the coaching plan.

36. Plaintiff avers that the Caucasian workers wanted to destabilize Plaintiff's ability to efficiently run his department, and management unfortunately seemed to support the claims of the workers by issuing Plaintiff a subjective coaching plan.

37. As part of the coaching plan, Plaintiff was to meet weekly with Supervisor Rubendall, however no additional follow-up meetings occurred after August 29, 2024 in order to review/discuss.

38. Following the meeting on August 29, 2024, Plaintiff utilized Defendant's internal services and sent an email to Human Resources to discuss his concerns regarding the coaching plan. Plaintiff requested to speak with an HR manager.

39. The response to Plaintiff's email instead came from HR Facilities Management Business Partner Ramon Cordero.

40. Sometime early in September 2024, Plaintiff met with HR Facilities Management Business Partner Ramon Cordero to discuss the coaching plan.

41. Plaintiff asked Mr. Cordero whether this was normal procedure for a first step in a developmental plan.

42. Plaintiff expressed during this meeting with Mr. Cordero that his main concern was that the coaching plan felt retaliatory, as it was based on subjective complaints and hearsay rather than actual policy violations.

43. Plaintiff stated that his decisions were guided by the Performance and Behavior Expectations policy, but that he felt he was being held solely accountable, while others were not. Plaintiff suggested that perhaps the entire department could benefit from training on the policy, as he had observed multiple violations during his time there.

44. Mr. Cordero assured Plaintiff that the coaching plan was not a disciplinary action but was intended to help Plaintiff integrate into the team and the Tower Health culture. Mr. Cordero advised Plaintiff to develop strategies to implement his ideas and consult with his management team to communicate his departmental goals.

45. Plaintiff followed Mr. Cordero's guidance and scheduled a meeting with Vice President of Support Services Melanie Stutzman-Ricci, who accepted and included Systems Director of Facilities and Engineering Daniel Keller and Plaintiff's Supervisor, Director of Facilities Management Michael Rubendall, to attend the meeting.

46. In September 2024, Plaintiff reported to management, specifically Vice President of Support Services Melannie Stutzman-Ricci (Caucasian), Systems Director of Facilities and Engineering Dan Keller (Caucasian), and Plaintiff's Supervisor, Director of Facilities Management Mike Rubendall (Caucasian), that the department's

employees were undermining his authority and not following policy, and to seek support, guidance and clarification regarding expectations for his role as Utilities Manager. Plaintiff brought a copy of his job summary to the meeting.

47. During the meeting, Plaintiff explained that his decisions were guided by Tower Health/Reading Hospital policies.

48. Plaintiff noted that a particular problem was that department workers had a tradition of not starting assignments after 1:00 p.m. on workdays.

49. Plaintiff also noted the employees were not starting real work at their start (7:00 a.m.) and their allotted time for breaks.

50. Plaintiff indicated that he was not opposed to a coaching plan which was intended to help him integrate with the department, but that he was concerned about a plan that offered no support from leadership and seemed to portray him as incompetent, despite being given increasing responsibility each week.

51. Plaintiff expressed that the coaching plan did not appear to set him up for success, but rather asked Plaintiff to change the opinions of the employees directly reporting to him.

52. Plaintiff shared an incident involving the UV lights, where several team members confronted him in a physically and verbally challenging manner when he presented ideas related to organizational leadership and planning.

53. Plaintiff noted that the coaching plan described him as "ruling with an iron fist" and asked whether this characterization was accurate, as he had not observed others being held accountable to the same policies.

54. Ms. Stutzman-Ricci stated that due to Plaintiff's position and responsibilities, Plaintiff should expect to be treated differently and that his decisions impacted the actions of his direct reports. She emphasized that while staff may follow Plaintiff's directives, he should consider their extensive combined experience when managing the team.

55. Plaintiff responded that he understood the responsibilities of his position, but that policies should be applied consistently, fairly, and impartially to all employees.

56. Ms. Stutzman-Ricci suggested that if Plaintiff's disagreement with the coaching plan continued, it could affect his ability to adapt to Defendant.

57. Plaintiff responded that he was fully capable of adapting.

58. Ms. Stutzman-Ricci further mentioned that Plaintiff's military background might make adaptation more difficult, noting that he should not treat team members as soldiers.

59. Plaintiff replied that he had been out of the military for nearly ten years and was fully aware of his work environment.

60. Mr. Keller stated that Plaintiff's power plant background was one of the reasons for his hiring and that extending my probationary period was his recommendation and was intended to allow additional time to adapt. He also

emphasized the value of skilled electricians and technicians to the hospital and how difficult they are to replace.

61. The meeting concluded with Ms. Stutzman-Ricci restating that the coaching plan was intended to help me integrate and was not a disciplinary action.

62. Ms. Stutzman-Ricci added that, over time, Plaintiff might determine that this environment might not be the right fit and that Plaintiff might be better off pursuing other opportunities, such as "raising puppies".

63. The Caucasian subordinates did not merely complain about Plaintiff; they manufactured and reported the alleged safety violations for the specific purpose of causing Plaintiff to be disciplined, suspended, and terminated. Having failed to drive Plaintiff out through open resistance and through the subjective complaints that produced the August 2024 coaching plan and the extension of his probationary period, they escalated to false safety accusations precisely because they understood that safety allegations in a hospital setting would compel management to remove him.

64. The Caucasian employees who reported Plaintiff to management were the same subordinates who had openly resisted Plaintiff's authority from the outset of his tenure, who resented that a Hispanic, Black, Afro-Colombian man had been placed in a leadership role over an all-white, predominantly Caucasian department, and who had never previously worked under a minority manager. Their resentment of Plaintiff's race, color, national origin, and ethnicity motivated each complaint they lodged against him, beginning with the subjective complaints underlying the August 2024 coaching

plan and continuing through the fabricated safety reports that preceded his suspension and termination.

65. The Caucasian subordinates communicated their false safety reports directly to the management officials who held authority over Plaintiff's employment, including Director of Facilities Management Michael Rubendall, Vice President of Support Services Melanie Stutzman-Ricci, and Systems Director of Facilities and Engineering Daniel Keller. These same subordinates had earlier taken their subjective complaints about Plaintiff to Vice President Stutzman-Ricci, which prompted Human Resources to recommend the coaching plan. The four incidents later invoked as grounds for Plaintiff's suspension and termination — the Steam Header, Battery Fault, CoGen, and Specialty Rigging incidents — originated entirely in the reports of these subordinates.

66. Beginning in approximately mid-November 2024 and continuing until the time of Plaintiff’s suspension in mid-January 2025, Plaintiff avers that the Caucasian workers in his department falsely reported to management over him that there were safety concerns in the workplace because of his leadership.

67. Plaintiff avers that the allegations of safety violations were manufactured to get Plaintiff fired.

68. Plaintiff avers that the Caucasian workers were using management as a “cat’s paw” to terminate him because of his race, color, national origin, ethnicity and/or age.

69. Plaintiff avers that the Caucasian workers did not like change and resented the fact that a Hispanic person had been given this important leadership role and was implementing needed change.

70. Additionally, Plaintiff avers that management did not attempt to understand the nature of the alleged incidents and did not question Plaintiff about them.

71. During the December holidays, Plaintiff noticed several departmental events and manager gatherings from which he was excluded, such as manager lunches and meetings.

72. Additionally, in the last four weeks before Complainant's suspension, it became clear that his supervisor, Michael Rubendall, was deliberately avoiding him. Their interactions were limited to mandatory department meetings or operational sessions where Plaintiff had to present status reports on projects, and he lacked the necessary information because Rubendall was avoiding him.

73. The weekend before Plaintiff's suspension, Plaintiff was the manager "on call" when the hospital experienced a loss of electrical power. Therefore, Plaintiff was in charge until relieved.

74. Plaintiff began coordinating and requesting status updates from the various buildings and departments across the hospital campus; there appeared to be some confusion regarding radio communications.

75. Approximately one hour after Plaintiff's arrival, Plaintiff learned that Mike Rubendall (Caucasian) was also on campus and was communicating with Facilities personnel using a different radio frequency.

76. It was highly unusual for Mr. Rubendall to ignore Plaintiff.

77. Plaintiff subsequently met Mr. Rubendall in one of the switchgear rooms, along with two electricians and the Maintenance Department lead.

78. Plaintiff discussed the status of the hospital's electrical power, the work that remained to fully restore power, and the steps being taken to return the hospital to normal operating conditions.

79. Following that discussion, Mr. Rubendall and Plaintiff continued working separately.

80. The hospital was ultimately returned to normal operating conditions.

81. Mr. Rubendall failed to follow normal procedure in issues of this nature which was to interact with Plaintiff.

82. On January 14, 2025, Plaintiff was verbally suspended from his position by Vice President of Support Services Melanie Stutzman-Ricci. She stated it was due to safety allegations stemming from the CoGen incident on December 20, 2024.

83. Plaintiff had to turn in his ID and keys for the hospital and was escorted out of the property by security.

84. On January 20, 2025, Plaintiff had an in-person meeting with HR Facilities Management Business Partner Ramon Cordero, during which Mr. Cordero

explained the reasons for Plaintiff's suspension and the allegations raised by some of the employees directly reporting to Plaintiff.

85. It was during this meeting with Mr. Cordero that Plaintiff was told that there were allegedly additional allegations raised.

86. These allegations included the following claimed incidents:

a. Mid-November - Steam Header Incident;

b. December 2024 - Battery fault incident;

c. December 20, 2024 - CoGen Incident;

d. January 2025 - Specialty Rigging Incident.

87. Plaintiff was not accused of a safety violation for any of these incidents until January 14, 2025, and was not made aware of any other allegations besides the December 20, 2024 CoGen incident until his meeting with Mr. Cordero on January 20, 2025.

88. Plaintiff was asked by Mr. Cordero to submit statements regarding the incidents, however was never interviewed or asked questions by Human Resources or anyone else at Defendant regarding the reasons why the allegations were false and/or his conduct was safe.

89. White employes made up details about the safety incidents at the power plant, including:

a. Boiler operators Cole and 2-3 other white males made up that Plaintiff was pressing buttons on the generator making it seem like Plaintiff didn't know safety protocol;

b. Electricians Dan and Troy (both Caucasian) were mispresenting things that Plaintiff was unsafe and he was yelling at them and being confrontational and being too demanding. Plaintiff denies these allegations;

c. White employees fabricated how Plaintiff had a burn injury to his hand due to lack of following safety protocol where Plaintiff suffered no burns and followed protocol. Plaintiff denies these allegations

90. Plaintiff submitted via email to Mr. Cordero statements regarding each of the four (4) incidents.

91. Following this meeting on January 20, 2025 with Mr. Cordero, all subsequent communication with Human Resources continued via email.

92. On January 30, 2025, Plaintiff wrote an email to HR Facilities Management Business Partner Ramon Cordero, raising concerns of discrimination because he is a minority, that the Caucasian employees have never had a minority manager before, and that other managers or directors had been approached to circumvent Plaintiff's instructions.

93. On January 31, 2025, Plaintiff was terminated at a meeting with Systems Director of Facilities and Engineering Daniel Keller and HR Facilities Management Business Partner Ramon Cordero.

94. At the January 31st termination meeting, Mr. Keller informed Plaintiff that he was being terminated due to four safety incidents that had occurred, which put the staff at risk.

95. Plaintiff stated the safety concerns were baseless, and in any event, there were definitely other unsafe actions connected with the two incidents that he addressed to mitigate risk that were not considered, including a serious safety incident where Caucasian employee Dan S. had improper footwear (PPE) for working on the energized switch gear.

96. Plaintiff additionally stated that none of these safety allegations were raised until he had been suspended on January 14, 2025, and that at that time, only the CoGen incident was raised.

97. No EEO investigation was performed after Plaintiff's January 30, 2025 email to Mr. Cordero regarding discrimination.

98. Plaintiff was not interviewed about his claims of discrimination because of his minority status, and instead Plaintiff was terminated on January 31, 2025.

99. The management officials who suspended and terminated Plaintiff relied entirely on the Caucasian subordinates' false reports in doing so. Vice President Stutzman-Ricci suspended Plaintiff on January 14, 2025 based on the subordinates'

account of the December 20, 2024 CoGen incident, and Systems Director Keller terminated Plaintiff on January 31, 2025 based on the four safety incidents the subordinates had reported. The subordinates' false reports were a direct and substantial cause of Plaintiff's suspension and termination; those adverse actions were the intended and foreseeable consequence of the subordinates' conduct, and management identified no basis for either action independent of the subordinates' reports.

100. Plaintiff avers that, behind Plaintiff’s back, his Caucasian managers accepted the complaints and allegations of the Caucasian employees who directly reported to Plaintiff and who manipulated management into firing Plaintiff because of his protected class status, including race, color, national origin, ethnicity and/or age.

101. Defendant conducted no independent investigation capable of severing the connection between the subordinates' discriminatory reports and Plaintiff's suspension and termination. Management never questioned Plaintiff about the alleged incidents before suspending him, never interviewed him regarding why the allegations were false or his conduct was safe, and reached its decision to terminate him by accepting the subordinates' accounts at face value. To the extent Defendant evaluated the incidents at all, that evaluation rested entirely on facts supplied by the biased subordinates, such that Defendant effectively delegated the fact finding to the very employees who sought Plaintiff's removal. At no point did Defendant determine that Plaintiff's suspension or termination was justified on any basis apart from the subordinates' reports.

102. Defendant knew, or reasonably should have known, that the Caucasian subordinates' reports against Plaintiff were motivated by their resistance to and resentment of a minority manager. Plaintiff had repeatedly reported to Rubendall, to Human Resources Business Partner Ramon Cordero, and to Vice President Stutzman-Ricci and Systems Director Keller that his subordinates were undermining his authority, refusing to follow policy, and circumventing his instructions, and that the complaints against him were based on hearsay and subjective opinion rather than actual policy violations. Despite this knowledge, Defendant allowed the subordinates' discriminatory reports to achieve their intended effect — Plaintiff's suspension and termination — without investigation.

103. Plaintiff was replaced with white comparator Jason Davey in his job duties and Davies had less experience and requisite knowledge than Plaintiff, Plaintiff had broader skill sets, and Davies' skills were in the energy management area.

104. As far as age discrimination, supervisor Mike Rubendall commented Plaintiff being a retired veteran and having a pension while working; he said Plaintiff was "double dipping" because he already had a military pension and also had a job as if there was something wrong with that.

105. Plaintiff has been discriminated against based upon his race, color, national origin, ethnicity and/or age.

106. Plaintiff avers that his termination was an illegal termination based on discrimination because of his race, color, national origin, ethnicity and/or age.

107. Plaintiff avers that Defendant's management acted as the "Cat's Paw" of the Caucasian employees reporting to Plaintiff and was manipulated into suspending and then terminating Plaintiff based upon race, color, national origin, ethnicity and/or age when Plaintiff was falsely accused.

108. Additionally, Plaintiff avers his termination was in retaliation for his January 30, 2025 discrimination complaint.

109. Defendant, by and through its agents, managers, employees, and HR officials, many of the foregoing holding positions of authority, violated Plaintiff's rights.

110. Defendant acted willfully and in disregard of Plaintiff's federal rights making it liable for liquidated damages under the ADEA.

111. At all relevant times, the Defendant, by and through the actions and inactions of its agents, managers, employees and HR officials, did not act in good faith, and the activity of terminating Plaintiff was done in consultation with second-line supervisors or above.

112. At all relevant times, Defendant, by and through the actions and inactions of its agents, managers, employees, and HR officials, has failed to act in good faith towards Plaintiff and (1) intentionally or recklessly ignored company non-discrimination policies, or (2) was inadequately trained in recognition of discrimination in the workplace.

113. Defendant acted with malice or reckless indifference to Plaintiff's federally-protected rights.

114. Plaintiff has sustained damages as a result of the termination and retaliation, including lost wages, pain, suffering, and humiliation.

115. Defendant's activity herein was not done pursuant to good-faith practices in anti-discrimination requiring Kolstad liability.

116. No similarly-situated members of other protected classes were treated in this fashion.

117. At the time of his termination, Plaintiff was earning $51.16/hour.

118. Plaintiff has mitigated his damages.

119. Plaintiff's counsel has incurred attorney's fees and costs which are recoverable under Title VII, Section 1981, the PHRA and the ADEA.

120. Defendant acted with the requisite mental state for punitive damages, intentionally, wantonly, willfully or in reckless disregard of federal law.

121. Plaintiff experienced humiliation, embarrassment, and emotional distress as a result of Defendant's conduct.

122. Defendant's management and Human Resource officials aided and abetted discrimination under the PHRA by the aforesaid conduct.

123. Plaintiff sustained damages as a result of Defendant's conduct, including lost compensation and benefits (including dental benefits, 403(b) and life insurance contributions, and other benefits) and actual monetary losses,

compensatory damages, liquidated damages, attorney's fees, costs and witness fees, and is entitled to equitable relief, including reinstatement, and an additional amount for the tax consequences for an award in Plaintiff's favor under the Third Circuit's ruling in Eshelman v. Agere Systems, Inc., 554 F.3d 426 (3d Cir. 2009).

124. There is a causal link between the adverse actions and the employment actions herein.

**COUNT I**

**HUGO JIMENEZ-SOLIS v.**
**TOWER HEALTH f/k/a THE READING HOSPITAL**

**VIOLATION OF TITLE VII – RACE DISCRIMINATION**

125. Plaintiff realleges and incorporates the foregoing paragraphs as if they were set forth fully herein.

126. Plaintiff is in a protected class because of his race, Hispanic.

127. Plaintiff was qualified for his position.

128. Plaintiff suffered adverse employment action(s) because of his race by Defendant.

129. There is a causal connection between the adverse employment action sustained by Plaintiff and his membership in a protected class.

130. Plaintiff has suffered damages.

WHEREFORE, Plaintiff demands over $150,000.00 and the following relief from Defendant:

(a) Wages, employment benefits or other compensation denied or lost by such violation, including back pay and front pay, including base wages, overtime, premium pay, differentials, bonuses, and value of lost benefits (including employer-paid health insurance premiums) from the date of termination to judgment, with pre- and post-judgment interest, and make-whole relief for pay disparity including retroactive adjustment to the higher comparator rate for all hours worked, with overtime recalculated at the corrected regular rate, for the relevant limitations period;

(b) Equitable relief such as reinstatement; reinstatement to Plaintiff's former position or a substantially equivalent position with the same seniority, benefits, and terms and conditions; or, in the alternative, front pay in an amount sufficient to make Plaintiff whole for loss of future earnings and benefits;

(c) Restoration of seniority, accruals, retirement service credit, and all other benefits as if continuously employed, or a monetary equivalent if restoration is infeasible, including payment of missed employer retirement contributions and lost vesting credit;

(d) Reasonable attorney's fees, litigation expenses, expert witness fees, and costs of suit, including non-taxable costs, as authorized by Title VII;

(e) The employee's expert witness fee, if any;

(f) Compensatory damages for emotional pain, suffering, inconvenience, mental anguish, humiliation, and loss of enjoyment of life;

(g) Punitive damages to deter and punish intentional discrimination or reckless indifference to federally protected rights, including conduct perpetrated by supervisors, second-line management and above and/or human resource officials;

(h) Reimbursement or direct payment of COBRA premiums or equivalent medical insurance costs incurred due to loss of employment, plus out-of-pocket medical expenses caused by the interruption of coverage;

(i) A neutral reference limited to dates of employment and position, non-disparagement, and correction/withdrawal of adverse statements made to unemployment authorities;

(j) An additional amount for the tax consequences for an award in Plaintiff's favor under the Third Circuit's Eshelman doctrine. An additional amount for the negative tax consequences of a lump-sum award pursuant to the Third Circuit's Eshelman doctrine, applied to back pay, front pay, and any lump-sum taxable components;

(k) A declaration that Defendant's conduct violated Title VII;

(l) Production of Plaintiff's complete personnel file and expungement of all discipline related to the asserted pretextual reasons;

(m) Pre-judgment interest from [date to be determined], and post-judgment interest at the legal rate;

(n) Other costs of the action, including taxable costs;

(o) And such other and further legal and equitable relief as the Court deems just and proper to fully make Plaintiff whole, including ancillary orders necessary to effectuate reinstatement and non-retaliation.

**COUNT II**

**HUGO JIMENEZ-SOLIS v.**
**TOWER HEALTH f/k/a THE READING HOSPITAL**

**VIOLATION OF TITLE VII – COLOR DISCRIMINATION**

131. Plaintiff realleges and incorporates the foregoing paragraphs as if they were set forth fully herein.

132. Plaintiff is in a protected class because of color, black.

133. Plaintiff was qualified for his position.

134. Plaintiff suffered adverse employment action(s) because of his color by Defendant.

135. There is a causal connection between the adverse employment action sustained by Plaintiff and his membership in a protected class.

136. Plaintiff has suffered damages.

WHEREFORE, Plaintiff demands over $150,000.00 and the following relief from Defendant:

(a) Wages, employment benefits or other compensation denied or lost by such violation, including back pay and front pay, including base wages, overtime, premium pay, differentials, bonuses, and value of lost benefits (including employer-paid health insurance premiums) from the date of termination to judgment, with pre-

and post-judgment interest, and make-whole relief for pay disparity including retroactive adjustment to the higher comparator rate for all hours worked, with overtime recalculated at the corrected regular rate, for the relevant limitations period;

(b) Equitable relief such as reinstatement; reinstatement to Plaintiff's former position or a substantially equivalent position with the same seniority, benefits, and terms and conditions; or, in the alternative, front pay in an amount sufficient to make Plaintiff whole for loss of future earnings and benefits;

(c) Restoration of seniority, accruals, retirement service credit, and all other benefits as if continuously employed, or a monetary equivalent if restoration is infeasible, including payment of missed employer retirement contributions and lost vesting credit;

(d) Reasonable attorney's fees, litigation expenses, expert witness fees, and costs of suit, including non-taxable costs, as authorized by Title VII;

(e) The employee's expert witness fee, if any;

(f) Compensatory damages for emotional pain, suffering, inconvenience, mental anguish, humiliation, and loss of enjoyment of life;

(g) Punitive damages to deter and punish intentional discrimination or reckless indifference to federally protected rights, including conduct perpetrated by supervisors, second-line management and above and/or human resource officials;

(h) Reimbursement or direct payment of COBRA premiums or equivalent medical insurance costs incurred due to loss of employment, plus out-of-pocket medical expenses caused by the interruption of coverage;

(i) A neutral reference limited to dates of employment and position, non-disparagement, and correction/withdrawal of adverse statements made to unemployment authorities;

(j) An additional amount for the tax consequences for an award in Plaintiff's favor under the Third Circuit's Eshelman doctrine. An additional amount for the negative tax consequences of a lump-sum award pursuant to the Third Circuit’s Eshelman doctrine, applied to back pay, front pay, and any lump-sum taxable components;

(k) A declaration that Defendant’s conduct violated Title VII;

(l) Production of Plaintiff’s complete personnel file and expungement of all discipline related to the asserted pretextual reasons;

(m) Pre-judgment interest from [date to be determined], and post-judgment interest at the legal rate;

(n) Other costs of the action, including taxable costs;

(o) And such other and further legal and equitable relief as the Court deems just and proper to fully make Plaintiff whole, including ancillary orders necessary to effectuate reinstatement and non-retaliation.

**COUNT III**

**HUGO JIMENEZ-SOLIS v.**
**TOWER HEALTH f/k/a THE READING HOSPITAL**

**VIOLATION OF TITLE VII –**
**NATIONAL ORIGIN/ETHNICITY DISCRIMINATION**

137. Plaintiff realleges and incorporates the foregoing paragraphs as if they were set forth fully herein.

138. Plaintiff is in a protected class because of his national origin/ethnicity, Colombia/Afro-Colombian.

139. Plaintiff was qualified for his position.

140. Plaintiff suffered adverse employment action(s) because of his national origin by Defendant.

141. There is a causal connection between the adverse employment action sustained by Plaintiff and his membership in a protected class.

142. Plaintiff has suffered damages.

WHEREFORE, Plaintiff demands over $150,000.00 and the following relief from Defendant:

(a) Wages, employment benefits or other compensation denied or lost by such violation, including back pay and front pay, including base wages, overtime, premium pay, differentials, bonuses, and value of lost benefits (including employer-paid health insurance premiums) from the date of termination to judgment, with pre- and post-judgment interest, and make-whole relief for pay disparity including

retroactive adjustment to the higher comparator rate for all hours worked, with overtime recalculated at the corrected regular rate, for the relevant limitations period;

(b) Equitable relief such as reinstatement; reinstatement to Plaintiff's former position or a substantially equivalent position with the same seniority, benefits, and terms and conditions; or, in the alternative, front pay in an amount sufficient to make Plaintiff whole for loss of future earnings and benefits;

(c) Restoration of seniority, accruals, retirement service credit, and all other benefits as if continuously employed, or a monetary equivalent if restoration is infeasible, including payment of missed employer retirement contributions and lost vesting credit;

(d) Reasonable attorney's fees, litigation expenses, expert witness fees, and costs of suit, including non-taxable costs, as authorized by Title VII;

(e) The employee's expert witness fee, if any;

(f) Compensatory damages for emotional pain, suffering, inconvenience, mental anguish, humiliation, and loss of enjoyment of life;

(g) Punitive damages to deter and punish intentional discrimination or reckless indifference to federally protected rights, including conduct perpetrated by supervisors, second-line management and above and/or human resource officials;

(h) Reimbursement or direct payment of COBRA premiums or equivalent medical insurance costs incurred due to loss of employment, plus out-of-pocket medical expenses caused by the interruption of coverage;

(i) A neutral reference limited to dates of employment and position, non-disparagement, and correction/withdrawal of adverse statements made to unemployment authorities;

(j) An additional amount for the tax consequences for an award in Plaintiff's favor under the Third Circuit's Eshelman doctrine. An additional amount for the negative tax consequences of a lump-sum award pursuant to the Third Circuit's Eshelman doctrine, applied to back pay, front pay, and any lump-sum taxable components;

(k) A declaration that Defendant's conduct violated Title VII;

(l) Production of Plaintiff's complete personnel file and expungement of all discipline related to the asserted pretextual reasons;

(m) Pre-judgment interest from [date to be determined], and post-judgment interest at the legal rate;

(n) Other costs of the action, including taxable costs;

(o) And such other and further legal and equitable relief as the Court deems just and proper to fully make Plaintiff whole, including ancillary orders necessary to effectuate reinstatement and non-retaliation.

**COUNT IV**

**HUGO JIMENEZ-SOLIS v.**
**TOWER HEALTH f/k/a THE READING HOSPITAL**

**VIOLATION OF TITLE VII – RACE**
**RETALIATION**

143. Plaintiff realleges and incorporates the foregoing paragraphs as if they were set forth fully herein.

144. Plaintiff is in a protected class because of his race, Hispanic.

145. Plaintiff suffered adverse employment action(s) because he reported discrimination.

146. Plaintiff suffered adverse employment actions(s) because he opposed discrimination.

147. Plaintiff had a good-faith, reasonable belief that his conduct was protected activity.

148. There is a causal connection between the adverse employment action sustained by Plaintiff and his protected activity herein.

149. Plaintiff has suffered damages.

WHEREFORE, Plaintiff demands over $150,000.00 and the following relief from Defendant:

(a) Wages, employment benefits or other compensation denied or lost by such violation, including back and front pay including base wages, overtime, premium pay, differentials, bonuses, and value of lost benefits (including employer-

paid health insurance premiums) from the date of termination to judgment, with pre- and post-judgment interest, and make-whole relief for pay disparity including retroactive adjustment to the higher comparator rate for all hours worked, with overtime recalculated at the corrected regular rate, for the relevant limitations period;

(b) Equitable relief such as reinstatement; reinstatement to Plaintiff's former position or a substantially equivalent position with the same seniority, benefits, and terms and conditions; or, in the alternative, front pay in an amount sufficient to make Plaintiff whole for loss of future earnings and benefits;

(c) Restoration of seniority, accruals, retirement service credit, and all other benefits as if continuously employed, or a monetary equivalent if restoration is infeasible, including payment of missed employer retirement contributions and lost vesting credit;

(d) Reasonable attorney's fees, litigation expenses, expert witness fees, and costs of suit, including non-taxable costs, as authorized by Title VII;

(e) The employee's expert witness fee, if any;

(f) Compensatory damages for emotional pain, suffering, inconvenience, mental anguish, humiliation, and loss of enjoyment of life;

(g) Punitive damages to deter and punish intentional discrimination or reckless indifference to federally protected rights, including conduct perpetrated by supervisors, second-line management and above and/or human resource officials;

(h) Reimbursement or direct payment of COBRA premiums or equivalent medical insurance costs incurred due to loss of employment, plus out-of-pocket medical expenses caused by the interruption of coverage;

(i) A neutral reference limited to dates of employment and position, non-disparagement, and correction/withdrawal of adverse statements made to unemployment authorities;

(j) An additional amount for the tax consequences for an award in Plaintiff's favor under the Third Circuit's Eshelman doctrine. An additional amount for the negative tax consequences of a lump-sum award pursuant to the Third Circuit's Eshelman doctrine, applied to back pay, front pay, and any lump-sum taxable components;

(k) A declaration that Defendant's conduct violated Title VII;

(l) Production of Plaintiff's complete personnel file and expungement of all discipline related to the asserted pretextual reasons;

(m) Pre-judgment interest from [date to be determined], and post-judgment interest at the legal rate;

(n) Other costs of the action, including taxable costs;

(o) And such other and further legal and equitable relief as the Court deems just and proper to fully make Plaintiff whole, including ancillary orders necessary to effectuate reinstatement and non-retaliation.

## COUNT V

## HUGO JIMENEZ-SOLIS v. TOWER HEALTH f/k/a THE READING HOSPITAL

## VIOLATION OF TITLE VII – COLOR RETALIATION

150. Plaintiff realleges and incorporates the foregoing paragraphs as if they were set forth fully herein.

151. Plaintiff is in a protected class because of his color, black.

152. Plaintiff suffered adverse employment action(s) because he reported discrimination.

153. Plaintiff suffered adverse employment actions(s) because he opposed discrimination.

154. Plaintiff had a good-faith, reasonable belief that his conduct was protected activity.

155. There is a causal connection between the adverse employment action sustained by Plaintiff and his protected activity herein.

156. Plaintiff has suffered damages.

WHEREFORE, Plaintiff over $150,000.00 and demands the following relief from Defendant:

(a) Wages, employment benefits or other compensation denied or lost by such violation, including back and front pay including base wages, overtime, premium pay, differentials, bonuses, and value of lost benefits (including employer-

paid health insurance premiums) from the date of termination to judgment, with pre- and post-judgment interest, and make-whole relief for pay disparity including retroactive adjustment to the higher comparator rate for all hours worked, with overtime recalculated at the corrected regular rate, for the relevant limitations period;

(b) Equitable relief such as reinstatement; reinstatement to Plaintiff's former position or a substantially equivalent position with the same seniority, benefits, and terms and conditions; or, in the alternative, front pay in an amount sufficient to make Plaintiff whole for loss of future earnings and benefits;

(c) Restoration of seniority, accruals, retirement service credit, and all other benefits as if continuously employed, or a monetary equivalent if restoration is infeasible, including payment of missed employer retirement contributions and lost vesting credit;

(d) Reasonable attorney's fees, litigation expenses, expert witness fees, and costs of suit, including non-taxable costs, as authorized by Title VII;

(e) The employee's expert witness fee, if any;

(f) Compensatory damages for emotional pain, suffering, inconvenience, mental anguish, humiliation, and loss of enjoyment of life;

(g) Punitive damages to deter and punish intentional discrimination or reckless indifference to federally protected rights, including conduct perpetrated by supervisors, second-line management and above and/or human resource officials;

(h) Reimbursement or direct payment of COBRA premiums or equivalent medical insurance costs incurred due to loss of employment, plus out-of-pocket medical expenses caused by the interruption of coverage;

(i) A neutral reference limited to dates of employment and position, non-disparagement, and correction/withdrawal of adverse statements made to unemployment authorities;

(j) An additional amount for the tax consequences for an award in Plaintiff's favor under the Third Circuit's Eshelman doctrine. An additional amount for the negative tax consequences of a lump-sum award pursuant to the Third Circuit's Eshelman doctrine, applied to back pay, front pay, and any lump-sum taxable components;

(k) A declaration that Defendant's conduct violated Title VII;

(l) Production of Plaintiff's complete personnel file and expungement of all discipline related to the asserted pretextual reasons;

(m) Pre-judgment interest from [date to be determined], and post-judgment interest at the legal rate;

(n) Other costs of the action, including taxable costs;

(o) And such other and further legal and equitable relief as the Court deems just and proper to fully make Plaintiff whole, including ancillary orders necessary to effectuate reinstatement and non-retaliation.

**COUNT VI**

**HUGO JIMENEZ-SOLIS v.**
**TOWER HEALTH f/k/a THE READING HOSPITAL**

**VIOLATION OF TITLE VII – NATIONAL ORIGIN/ETHNICITY**
**RETALIATION**

157. Plaintiff realleges and incorporates the foregoing paragraphs as if they were set forth fully herein.

158. Plaintiff is in a protected class because of his national origin/ethnicity, Colombia/Afro-Colombian.

159. Plaintiff suffered adverse employment action(s) because he reported discrimination.

160. Plaintiff suffered adverse employment actions(s) because he opposed discrimination.

161. Plaintiff had a good-faith, reasonable belief that his conduct was protected activity.

162. There is a causal connection between the adverse employment action sustained by Plaintiff and his protected activity herein.

163. Plaintiff has suffered damages.

WHEREFORE, Plaintiff demands over $150,000.00 and the following relief from Defendant:

(a) Wages, employment benefits or other compensation denied or lost by such violation, including back and front pay including base wages, overtime,

premium pay, differentials, bonuses, and value of lost benefits (including employer-paid health insurance premiums) from the date of termination to judgment, with pre- and post-judgment interest, and make-whole relief for pay disparity including retroactive adjustment to the higher comparator rate for all hours worked, with overtime recalculated at the corrected regular rate, for the relevant limitations period;

(b) Equitable relief such as reinstatement; reinstatement to Plaintiff's former position or a substantially equivalent position with the same seniority, benefits, and terms and conditions; or, in the alternative, front pay in an amount sufficient to make Plaintiff whole for loss of future earnings and benefits;

(c) Restoration of seniority, accruals, retirement service credit, and all other benefits as if continuously employed, or a monetary equivalent if restoration is infeasible, including payment of missed employer retirement contributions and lost vesting credit;

(d) Reasonable attorney's fees, litigation expenses, expert witness fees, and costs of suit, including non-taxable costs, as authorized by Title VII;

(e) The employee's expert witness fee, if any;

(f) Compensatory damages for emotional pain, suffering, inconvenience, mental anguish, humiliation, and loss of enjoyment of life;

(g) Punitive damages to deter and punish intentional discrimination or reckless indifference to federally protected rights, including conduct perpetrated by supervisors, second-line management and above and/or human resource officials;

(h) Reimbursement or direct payment of COBRA premiums or equivalent medical insurance costs incurred due to loss of employment, plus out-of-pocket medical expenses caused by the interruption of coverage;

(i) A neutral reference limited to dates of employment and position, non-disparagement, and correction/withdrawal of adverse statements made to unemployment authorities;

(j) An additional amount for the tax consequences for an award in Plaintiff's favor under the Third Circuit's Eshelman doctrine. An additional amount for the negative tax consequences of a lump-sum award pursuant to the Third Circuit's Eshelman doctrine, applied to back pay, front pay, and any lump-sum taxable components;

(k) A declaration that Defendant's conduct violated Title VII;

(l) Production of Plaintiff's complete personnel file and expungement of all discipline related to the asserted pretextual reasons;

(m) Pre-judgment interest from [date to be determined], and post-judgment interest at the legal rate;

(n) Other costs of the action, including taxable costs;

(o) And such other and further legal and equitable relief as the Court deems just and proper to fully make Plaintiff whole, including ancillary orders necessary to effectuate reinstatement and non-retaliation.

## COUNT VII

## HUGO JIMENEZ-SOLIS v.
## TOWER HEALTH f/k/a THE READING HOSPITAL

## VIOLATION OF SECTION 1981 – RACE DISCRIMINATION

164. Plaintiff realleges and incorporates the foregoing paragraphs as if they were set forth fully herein.

165. Plaintiff is in a protected class because of race, Hispanic.

166. Plaintiff suffered adverse employment action(s) because of his race by Defendant.

167. There is a causal connection between the adverse employment action sustained by Plaintiff and his membership in a protected class.

168. Plaintiff has suffered damages.

WHEREFORE, Plaintiff demands over $150,000.00 and the following relief from Defendant:

(a) Wages, employment benefits or other compensation denied or lost by such violation, including back pay and front pay, including base wages, overtime, premium pay, differentials, bonuses, and value of lost benefits (including employer-paid health insurance premiums) from the date of termination to judgment, with pre- and post-judgment interest, and make-whole relief for pay disparity including retroactive adjustment to the higher comparator rate for all hours worked, with overtime recalculated at the corrected regular rate, for the relevant limitations period;

(b) Equitable relief such as reinstatement; reinstatement to Plaintiff's former position or a substantially equivalent position with the same seniority, benefits, and terms and conditions; or, in the alternative, front pay in an amount sufficient to make Plaintiff whole for loss of future earnings and benefits;

(c) Restoration of seniority, accruals, retirement service credit, and all other benefits as if continuously employed, or a monetary equivalent if restoration is infeasible, including payment of missed employer retirement contributions and lost vesting credit;

(d) Reasonable attorney's fees, litigation expenses, expert witness fees, and costs of suit, as authorized by 42 U.S.C. § 1988, together with such other and further relief as this Court deems just and proper;

(e) The employee's expert witness fee, if any;

(f) Compensatory damages for emotional pain, suffering, inconvenience, mental anguish, humiliation, and loss of enjoyment of life;

(g) Punitive damages to deter and punish intentional discrimination or reckless indifference to federally protected rights, including conduct perpetrated by second-line management and above and/or human resource officials;

(h) Reimbursement or direct payment of COBRA premiums or equivalent medical insurance costs incurred due to loss of employment, plus out-of-pocket medical expenses caused by the interruption of coverage;

(i) A neutral reference limited to dates of employment and position, non-disparagement, and correction/withdrawal of adverse statements made to unemployment authorities;

(j) An additional amount for the tax consequences for an award in Plaintiff's favor under the Third Circuit's Eshelman doctrine. An additional amount for the negative tax consequences of a lump-sum award pursuant to the Third Circuit's Eshelman doctrine, applied to back pay, front pay, and any lump-sum taxable components;

(k) A declaration that Defendant's conduct violated Section 1981;

(l) Production of Plaintiff's complete personnel file and expungement of all discipline related to the asserted pretextual reasons;

(m) Pre-judgment interest from [date to be determined], and post-judgment interest at the legal rate;

(n) Other costs of the action, including taxable costs;

(o) And such other and further legal and equitable relief as the Court deems just and proper to fully make Plaintiff whole, including ancillary orders necessary to effectuate reinstatement and non-retaliation.

## COUNT VIII

## HUGO JIMENEZ-SOLIS v.
## TOWER HEALTH f/k/a THE READING HOSPITAL

## VIOLATION OF SECTION 1981 – COLOR DISCRIMINATION

169. Plaintiff realleges and incorporates the foregoing paragraphs as if they were set forth fully herein.

170. Plaintiff is in a protected class because of color, black.

171. Plaintiff suffered adverse employment action(s) because of his color by Defendant.

172. There is a causal connection between the adverse employment action sustained by Plaintiff and his membership in a protected class.

173. Plaintiff has suffered damages.

WHEREFORE, Plaintiff demands over $150,000.00 and the following relief from Defendant:

(a) Wages, employment benefits or other compensation denied or lost by such violation, including back pay and front pay, including base wages, overtime, premium pay, differentials, bonuses, and value of lost benefits (including employer-paid health insurance premiums) from the date of termination to judgment, with pre- and post-judgment interest, and make-whole relief for pay disparity including retroactive adjustment to the higher comparator rate for all hours worked, with overtime recalculated at the corrected regular rate, for the relevant limitations period;

(b) Equitable relief such as reinstatement; reinstatement to Plaintiff's former position or a substantially equivalent position with the same seniority, benefits, and terms and conditions; or, in the alternative, front pay in an amount sufficient to make Plaintiff whole for loss of future earnings and benefits;

(c) Restoration of seniority, accruals, retirement service credit, and all other benefits as if continuously employed, or a monetary equivalent if restoration is infeasible, including payment of missed employer retirement contributions and lost vesting credit;

(d) Reasonable attorney's fees, litigation expenses, expert witness fees, and costs of suit, as authorized by 42 U.S.C. § 1988, together with such other and further relief as this Court deems just and proper;

(e) The employee's expert witness fee, if any;

(f) Compensatory damages for emotional pain, suffering, inconvenience, mental anguish, humiliation, and loss of enjoyment of life;

(g) Punitive damages to deter and punish intentional discrimination or reckless indifference to federally protected rights, including conduct perpetrated by second-line management and above and/or human resource officials;

(h) Reimbursement or direct payment of COBRA premiums or equivalent medical insurance costs incurred due to loss of employment, plus out-of-pocket medical expenses caused by the interruption of coverage;

(i) A neutral reference limited to dates of employment and position, non-disparagement, and correction/withdrawal of adverse statements made to unemployment authorities;

(j) An additional amount for the tax consequences for an award in Plaintiff's favor under the Third Circuit's Eshelman doctrine. An additional amount for the negative tax consequences of a lump-sum award pursuant to the Third Circuit's Eshelman doctrine, applied to back pay, front pay, and any lump-sum taxable components;

(k) A declaration that Defendant's conduct violated Section 1981;

(l) Production of Plaintiff's complete personnel file and expungement of all discipline related to the asserted pretextual;

(m) Pre-judgment interest from [date to be determined], and post-judgment interest at the legal rate;

(n) Other costs of the action, including taxable costs;

(o) And such other and further legal and equitable relief as the Court deems just and proper to fully make Plaintiff whole, including ancillary orders necessary to effectuate reinstatement and non-retaliation.

## COUNT IX

## HUGO JIMENEZ-SOLIS v.
## TOWER HEALTH f/k/a THE READING HOSPITAL

## VIOLATION OF SECTION 1981 – ETHNICITY DISCRIMINATION

174. Plaintiff realleges and incorporates the foregoing paragraphs as if they were set forth fully herein.

175. Plaintiff is in a protected class because of ethnicity, Afro-Colombian.

176. Plaintiff suffered adverse employment action(s) because of his ethnicity by Defendant.

177. There is a causal connection between the adverse employment action sustained by Plaintiff and his membership in a protected class.

178. Plaintiff has suffered damages.

WHEREFORE, Plaintiff demands over $150,000.00 and the following relief from Defendant:

(a) Wages, employment benefits or other compensation denied or lost by such violation, including back pay and front pay, including base wages, overtime, premium pay, differentials, bonuses, and value of lost benefits (including employer-paid health insurance premiums) from the date of termination to judgment, with pre- and post-judgment interest, and make-whole relief for pay disparity including retroactive adjustment to the higher comparator rate for all hours worked, with overtime recalculated at the corrected regular rate, for the relevant limitations period;

(b) Equitable relief such as reinstatement; reinstatement to Plaintiff's former position or a substantially equivalent position with the same seniority, benefits, and terms and conditions; or, in the alternative, front pay in an amount sufficient to make Plaintiff whole for loss of future earnings and benefits;

(c) Restoration of seniority, accruals, retirement service credit, and all other benefits as if continuously employed, or a monetary equivalent if restoration is infeasible, including payment of missed employer retirement contributions and lost vesting credit;

(d) Reasonable attorney's fees, litigation expenses, expert witness fees, and costs of suit, as authorized by 42 U.S.C. § 1988, together with such other and further relief as this Court deems just and proper;

(e) The employee's expert witness fee, if any;

(f) Compensatory damages for emotional pain, suffering, inconvenience, mental anguish, humiliation, and loss of enjoyment of life;

(g) Punitive damages to deter and punish intentional discrimination or reckless indifference to federally protected rights, including conduct perpetrated by second-line management and above and/or human resource officials;

(h) Reimbursement or direct payment of COBRA premiums or equivalent medical insurance costs incurred due to loss of employment, plus out-of-pocket medical expenses caused by the interruption of coverage;

(i) A neutral reference limited to dates of employment and position, non-disparagement, and correction/withdrawal of adverse statements made to unemployment authorities;

(j) An additional amount for the tax consequences for an award in Plaintiff's favor under the Third Circuit's Eshelman doctrine. An additional amount for the negative tax consequences of a lump-sum award pursuant to the Third Circuit's Eshelman doctrine, applied to back pay, front pay, and any lump-sum taxable components;

(k) A declaration that Defendant's conduct violated Section 1981;

(l) Production of Plaintiff's complete personnel file and expungement of all discipline related to the asserted pretextual reasons;

(m) Pre-judgment interest from [date to be determined], and post-judgment interest at the legal rate;

(n) Other costs of the action, including taxable costs;

(o) And such other and further legal and equitable relief as the Court deems just and proper to fully make Plaintiff whole, including ancillary orders necessary to effectuate reinstatement and non-retaliation.

**COUNT X**

**HUGO JIMENEZ-SOLIS v.**
**TOWER HEALTH f/k/a THE READING HOSPITAL**

**VIOLATION OF SECTION 1981 – RACE**
**RETALIATION**

179. Plaintiff realleges and incorporates the foregoing paragraphs as if they were set forth fully herein.

180. Plaintiff is in a protected class because of his race, Hispanic.

181. Plaintiff suffered adverse employment action(s) because he reported discrimination.

182. Plaintiff suffered adverse employment actions(s) because he opposed discrimination.

183. Plaintiff had a good-faith, reasonable belief that his conduct was protected activity.

184. There is a causal connection between the adverse employment action sustained by Plaintiff and his protected activity herein.

185. Plaintiff has suffered damages.

WHEREFORE, Plaintiff demands over $150,000.00 and the following relief from Defendant:

(a) Wages, employment benefits or other compensation denied or lost by such violation, including back pay and front pay, including base wages, overtime, premium pay, differentials, bonuses, and value of lost benefits (including employer-

paid health insurance premiums) from the date of termination to judgment, with pre- and post-judgment interest, and make-whole relief for pay disparity including retroactive adjustment to the higher comparator rate for all hours worked, with overtime recalculated at the corrected regular rate, for the relevant limitations period;

(b) Equitable relief such as reinstatement; reinstatement to Plaintiff's former position or a substantially equivalent position with the same seniority, benefits, and terms and conditions; or, in the alternative, front pay in an amount sufficient to make Plaintiff whole for loss of future earnings and benefits;

(c) Restoration of seniority, accruals, retirement service credit, and all other benefits as if continuously employed, or a monetary equivalent if restoration is infeasible, including payment of missed employer retirement contributions and lost vesting credit;

(d) Reasonable attorney's fees, litigation expenses, expert witness fees, and costs of suit, as authorized by 42 U.S.C. § 1988, together with such other and further relief as this Court deems just and proper;

(e) The employee's expert witness fee, if any;

(f) Compensatory damages for emotional pain, suffering, inconvenience, mental anguish, humiliation, and loss of enjoyment of life;

(g) Punitive damages to deter and punish intentional discrimination or reckless indifference to federally protected rights, including conduct perpetrated by second-line management and above and/or human resource officials;

(h) Reimbursement or direct payment of COBRA premiums or equivalent medical insurance costs incurred due to loss of employment, plus out-of-pocket medical expenses caused by the interruption of coverage;

(i) A neutral reference limited to dates of employment and position, non-disparagement, and correction/withdrawal of adverse statements made to unemployment authorities;

(j) An additional amount for the tax consequences for an award in Plaintiff's favor under the Third Circuit's Eshelman doctrine. An additional amount for the negative tax consequences of a lump-sum award pursuant to the Third Circuit's Eshelman doctrine, applied to back pay, front pay, and any lump-sum taxable components;

(k) A declaration that Defendant's conduct violated Section 1981;

(l) Production of Plaintiff's complete personnel file and expungement of all discipline related to the asserted pretextual reasons;

(m) Pre-judgment interest from [date to be determined], and post-judgment interest at the legal rate;

(n) Other costs of the action, including taxable costs;

(o) And such other and further legal and equitable relief as the Court deems just and proper to fully make Plaintiff whole, including ancillary orders necessary to effectuate reinstatement and non-retaliation.

## COUNT XI

## HUGO JIMENEZ-SOLIS v.
## TOWER HEALTH f/k/a THE READING HOSPITAL

## VIOLATION OF SECTION 1981 – COLOR
## RETALIATION

186. Plaintiff realleges and incorporates the foregoing paragraphs as if they were set forth fully herein.

187. Plaintiff is in a protected class because of his color, black.

188. Plaintiff suffered adverse employment action(s) because he reported discrimination.

189. Plaintiff suffered adverse employment actions(s) because he opposed discrimination.

190. Plaintiff had a good-faith, reasonable belief that his conduct was protected activity.

191. There is a causal connection between the adverse employment action sustained by Plaintiff and his protected activity herein.

192. Plaintiff has suffered damages.

WHEREFORE, Plaintiff demands over $150,000.00 and the following relief from Defendant:

(a) Wages, employment benefits or other compensation denied or lost by such violation, including back pay and front pay, including base wages, overtime, premium pay, differentials, bonuses, and value of lost benefits (including employer-

paid health insurance premiums) from the date of termination to judgment, with pre- and post-judgment interest, and make-whole relief for pay disparity including retroactive adjustment to the higher comparator rate for all hours worked, with overtime recalculated at the corrected regular rate, for the relevant limitations period;

(b) Equitable relief such as reinstatement; reinstatement to Plaintiff's former position or a substantially equivalent position with the same seniority, benefits, and terms and conditions; or, in the alternative, front pay in an amount sufficient to make Plaintiff whole for loss of future earnings and benefits;

(c) Restoration of seniority, accruals, retirement service credit, and all other benefits as if continuously employed, or a monetary equivalent if restoration is infeasible, including payment of missed employer retirement contributions and lost vesting credit;

(d) Reasonable attorney's fees, litigation expenses, expert witness fees, and costs of suit, as authorized by 42 U.S.C. § 1988, together with such other and further relief as this Court deems just and proper;

(e) The employee's expert witness fee, if any;

(f) Compensatory damages for emotional pain, suffering, inconvenience, mental anguish, humiliation, and loss of enjoyment of life;

(g) Punitive damages to deter and punish intentional discrimination or reckless indifference to federally protected rights, including conduct perpetrated by second-line management and above and/or human resource officials;

(h) Reimbursement or direct payment of COBRA premiums or equivalent medical insurance costs incurred due to loss of employment, plus out-of-pocket medical expenses caused by the interruption of coverage;

(i) A neutral reference limited to dates of employment and position, non-disparagement, and correction/withdrawal of adverse statements made to unemployment authorities;

(j) An additional amount for the tax consequences for an award in Plaintiff's favor under the Third Circuit's Eshelman doctrine. An additional amount for the negative tax consequences of a lump-sum award pursuant to the Third Circuit's Eshelman doctrine, applied to back pay, front pay, and any lump-sum taxable components;

(k) A declaration that Defendant's conduct violated Section 1981;

(l) Production of Plaintiff's complete personnel file and expungement of all discipline related to the asserted pretextual reasons;

(m) Pre-judgment interest from [date to be determined], and post-judgment interest at the legal rate;

(n) Other costs of the action, including taxable costs;

(o) And such other and further legal and equitable relief as the Court deems just and proper to fully make Plaintiff whole, including ancillary orders necessary to effectuate reinstatement and non-retaliation.

**COUNT XII**

**HUGO JIMENEZ-SOLIS v.**
**TOWER HEALTH f/k/a THE READING HOSPITAL**

**VIOLATION OF SECTION 1981 – ETHNICITY**
**RETALIATION**

193. Plaintiff realleges and incorporates the foregoing paragraphs as if they were set forth fully herein.

194. Plaintiff is in a protected class because of his ethnicity, Afro-Colombian.

195. Plaintiff suffered adverse employment action(s) because he reported discrimination.

196. Plaintiff suffered adverse employment actions(s) because he opposed discrimination.

197. Plaintiff had a good-faith, reasonable belief that his conduct was protected activity.

198. There is a causal connection between the adverse employment action sustained by Plaintiff and his protected activity herein.

199. Plaintiff has suffered damages.

WHEREFORE, Plaintiff demands over $150,000.00 and the following relief from Defendant:

(a) Wages, employment benefits or other compensation denied or lost by such violation, including back pay and front pay, including base wages, overtime, premium pay, differentials, bonuses, and value of lost benefits (including employer-

paid health insurance premiums) from the date of termination to judgment, with pre- and post-judgment interest, and make-whole relief for pay disparity including retroactive adjustment to the higher comparator rate for all hours worked, with overtime recalculated at the corrected regular rate, for the relevant limitations period;

(b) Equitable relief such as reinstatement; reinstatement to Plaintiff's former position or a substantially equivalent position with the same seniority, benefits, and terms and conditions; or, in the alternative, front pay in an amount sufficient to make Plaintiff whole for loss of future earnings and benefits;

(c) Restoration of seniority, accruals, retirement service credit, and all other benefits as if continuously employed, or a monetary equivalent if restoration is infeasible, including payment of missed employer retirement contributions and lost vesting credit;

(d) Reasonable attorney's fees, litigation expenses, expert witness fees, and costs of suit, as authorized by 42 U.S.C. § 1988, together with such other and further relief as this Court deems just and proper;

(e) The employee's expert witness fee, if any;

(f) Compensatory damages for emotional pain, suffering, inconvenience, mental anguish, humiliation, and loss of enjoyment of life;

(g) Punitive damages to deter and punish intentional discrimination or reckless indifference to federally protected rights, including conduct perpetrated by second-line management and above and/or human resource officials;

(h) Reimbursement or direct payment of COBRA premiums or equivalent medical insurance costs incurred due to loss of employment, plus out-of-pocket medical expenses caused by the interruption of coverage;

(i) A neutral reference limited to dates of employment and position, non-disparagement, and correction/withdrawal of adverse statements made to unemployment authorities;

(j) An additional amount for the tax consequences for an award in Plaintiff's favor under the Third Circuit's Eshelman doctrine. An additional amount for the negative tax consequences of a lump-sum award pursuant to the Third Circuit's Eshelman doctrine, applied to back pay, front pay, and any lump-sum taxable components;

(k) A declaration that Defendant's conduct violated Section 1981;

(l) Production of Plaintiff's complete personnel file and expungement of all discipline related to the asserted pretextual reasons;

(m) Pre-judgment interest from [date to be determined], and post-judgment interest at the legal rate;

(n) Other costs of the action, including taxable costs;

(o) And such other and further legal and equitable relief as the Court deems just and proper to fully make Plaintiff whole, including ancillary orders necessary to effectuate reinstatement and non-retaliation.

## COUNT XIII

## HUGO JIMENEZ-SOLIS v.
## TOWER HEALTH f/k/a THE READING HOSPITAL

## VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT – RACE DISCRIMINATION

200. Plaintiff realleges and incorporates the foregoing paragraphs as if they were set forth fully herein.

201. Plaintiff is in a protected class because of race, Hispanic.

202. Plaintiff suffered adverse employment action(s) because of his race by Defendant.

203. There is a causal connection between the adverse employment action sustained by Plaintiff and his membership in a protected class.

204. Plaintiff has suffered damages.

WHEREFORE, Plaintiff demands over $150,000.00 and the following relief from Defendant:

(a) Wages, employment benefits or other compensation denied or lost by such violation, including back pay and front pay, including base wages, overtime, premium pay, differentials, bonuses, and value of lost benefits (including employer-paid health insurance premiums) from the date of termination to judgment, with pre- and post-judgment interest, and make-whole relief for pay disparity including retroactive adjustment to the higher comparator rate for all hours worked, with overtime recalculated at the corrected regular rate, for the relevant limitations period;

(b) Equitable relief such as reinstatement to Plaintiff's former position or a substantially equivalent position with the same seniority, benefits, and terms and conditions; or, in the alternative, front pay in an amount sufficient to make Plaintiff whole for loss of future earnings and benefits;

(c) Restoration of seniority, accruals, retirement service credit, and all other benefits as if continuously employed, or a monetary equivalent if restoration is infeasible, including payment of missed employer retirement contributions and lost vesting credit;

(d) Reasonable attorney's fees, litigation expenses, expert witness fees, and costs of suit, including non-taxable costs, as authorized by the PHRA;

(e) The employee's expert witness fee, if any;

(f) Compensatory damages for emotional pain, suffering, inconvenience, mental anguish, humiliation, and loss of enjoyment of life;

(g) Reimbursement or direct payment of COBRA premiums or equivalent medical insurance costs incurred due to loss of employment, plus out-of-pocket medical expenses caused by the interruption of coverage;

(h) A neutral reference limited to dates of employment and position, non-disparagement, and correction/withdrawal of adverse statements made to unemployment authorities;

(i) Make-whole relief calculated from the date of termination through the date of judgment (and, for front pay, for the court-determined period thereafter), less

interim earnings consistent with mitigation principles, without offset for unemployment compensation unless required by law;

(j) An additional amount for the negative tax consequences of a lump-sum award pursuant to the Third Circuit's Eshelman doctrine, applied to back pay, front pay, and any lump-sum taxable components, including a tax-gross up;

(k) A declaration that Defendant's conduct violated the PHRA;

(l) Production of Plaintiff's complete personnel file and expungement of all discipline related to the asserted pretextual reasons;

(m) Pre-judgment interest from [date to be determined], and post-judgment interest at the legal rate;

(n) Other costs of the action, including taxable costs;

(o) And such other and further legal and equitable relief as the Court deems just and proper to fully make Plaintiff whole, including ancillary orders necessary to effectuate reinstatement and non-retaliation.

## COUNT XIV

## HUGO JIMENEZ-SOLIS v.
## TOWER HEALTH f/k/a THE READING HOSPITAL

## VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT – COLOR DISCRIMINATION

205. Plaintiff realleges and incorporates the foregoing paragraphs as if they were set forth fully herein.

206. Plaintiff is in a protected class because of his color, black.

207. Plaintiff suffered adverse employment action(s) because of his color by Defendant.

208. There is a causal connection between the adverse employment action sustained by Plaintiff and his membership in a protected class.

209. Plaintiff has suffered damages.

WHEREFORE, Plaintiff demands over $150,000.00 and the following relief from Defendant:

(a) Wages, employment benefits or other compensation denied or lost by such violation, including front wages; back pay including base wages, overtime, premium pay, differentials, bonuses, and value of lost benefits (including employer-paid health insurance premiums) from the date of termination to judgment, with pre- and post-judgment interest, and make-whole relief for pay disparity including retroactive adjustment to the higher comparator rate for all hours worked, with overtime recalculated at the corrected regular rate, for the relevant limitations period;

(b) Equitable relief such as reinstatement; reinstatement to Plaintiff's former position or a substantially equivalent position with the same seniority, benefits, and terms and conditions; or, in the alternative, front pay in an amount sufficient to make Plaintiff whole for loss of future earnings and benefits;

(c) Restoration of seniority, accruals, retirement service credit, and all other benefits as if continuously employed, or a monetary equivalent if restoration is

infeasible, including payment of missed employer retirement contributions and lost vesting credit;

(d) Reasonable attorney's fees, litigation expenses, expert witness fees, and costs of suit, including non-taxable costs, as authorized by the PHRA;

(e) The employee's expert witness fee, if any;

(f) Compensatory damages for emotional pain, suffering, inconvenience, mental anguish, humiliation, and loss of enjoyment of life;

(g) Reimbursement or direct payment of COBRA premiums or equivalent medical insurance costs incurred due to loss of employment, plus out-of-pocket medical expenses caused by the interruption of coverage;

(h) A neutral reference limited to dates of employment and position, non-disparagement, and correction/withdrawal of adverse statements made to unemployment authorities;

(i) Make-whole relief calculated from the date of termination through the date of judgment (and, for front pay, for the court-determined period thereafter), less interim earnings consistent with mitigation principles, without offset for unemployment compensation unless required by law;

(j) An additional amount for the negative tax consequences of a lump-sum award pursuant to the Third Circuit's Eshelman doctrine, applied to back pay, front pay, and any lump-sum taxable components, including a tax-gross up;

(k) A declaration that Defendant's conduct violated the PHRA;

(l) Production of Plaintiff's complete personnel file and expungement of all discipline related to the asserted pretextual reasons;

(m) Pre-judgment interest from [date to be determined], and post-judgment interest at the legal rate;

(n) Other costs of the action, including taxable costs;

(o) And such other and further legal and equitable relief as the Court deems just and proper to fully make Plaintiff whole, including ancillary orders necessary to effectuate reinstatement and non-retaliation.

**COUNT XV**

**HUGO JIMENEZ-SOLIS v.**
**TOWER HEALTH f/k/a THE READING HOSPITAL**

**VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT –**
**NATIONAL ORIGIN DISCRIMINATION**

210. Plaintiff realleges and incorporates the foregoing paragraphs as if they were set forth fully herein.

211. Plaintiff is in a protected class because of his national origin, Colombia.

212. Plaintiff suffered adverse employment action(s) because of his national origin by Defendant.

213. There is a causal connection between the adverse employment action sustained by Plaintiff and his membership in a protected class.

214. Plaintiff has suffered damages.

WHEREFORE, Plaintiff demands over $150,000.00 and the following relief from Defendant:

(a) Wages, employment benefits or other compensation denied or lost by such violation, including front wages; back pay including base wages, overtime, premium pay, differentials, bonuses, and value of lost benefits (including employer-paid health insurance premiums) from the date of termination to judgment, with pre- and post-judgment interest, and make-whole relief for pay disparity including retroactive adjustment to the higher comparator rate for all hours worked, with overtime recalculated at the corrected regular rate, for the relevant limitations period;

(b) Equitable relief such as reinstatement; reinstatement to Plaintiff's former position or a substantially equivalent position with the same seniority, benefits, and terms and conditions; or, in the alternative, front pay in an amount sufficient to make Plaintiff whole for loss of future earnings and benefits;

(c) Restoration of seniority, accruals, retirement service credit, and all other benefits as if continuously employed, or a monetary equivalent if restoration is infeasible, including payment of missed employer retirement contributions and lost vesting credit;

(d) Reasonable attorney's fees, litigation expenses, expert witness fees, and costs of suit, including non-taxable costs, as authorized by the PHRA;

(e) The employee's expert witness fee, if any;

(f) Compensatory damages for emotional pain, suffering, inconvenience, mental anguish, humiliation, and loss of enjoyment of life;

(g) Reimbursement or direct payment of COBRA premiums or equivalent medical insurance costs incurred due to loss of employment, plus out-of-pocket medical expenses caused by the interruption of coverage;

(h) A neutral reference limited to dates of employment and position, non-disparagement, and correction/withdrawal of adverse statements made to unemployment authorities;

(i) Make-whole relief calculated from the date of termination through the date of judgment (and, for front pay, for the court-determined period thereafter), less interim earnings consistent with mitigation principles, without offset for unemployment compensation unless required by law;

(j) An additional amount for the negative tax consequences of a lump-sum award pursuant to the Third Circuit's Eshelman doctrine, applied to back pay, front pay, and any lump-sum taxable components, including a tax-gross up;

(k) A declaration that Defendant's conduct violated the PHRA;

(l) Production of Plaintiff's complete personnel file and expungement of all discipline related to the asserted pretextual reasons;

(m) Pre-judgment interest from [date to be determined], and post-judgment interest at the legal rate;

(n) Other costs of the action, including taxable costs;

(o) And such other and further legal and equitable relief as the Court deems just and proper to fully make Plaintiff whole, including ancillary orders necessary to effectuate reinstatement and non-retaliation.

**COUNT XVI**

**HUGO JIMENEZ-SOLIS v.**
**TOWER HEALTH f/k/a THE READING HOSPITAL**

**VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT –**
**ETHNICITY DISCRIMINATION**

215. Plaintiff realleges and incorporates the foregoing paragraphs as if they were set forth fully herein.

216. Plaintiff is in a protected class because of his ethnicity, Afro-Colombian.

217. Plaintiff suffered adverse employment action(s) because of his national origin by Defendant.

218. There is a causal connection between the adverse employment action sustained by Plaintiff and his membership in a protected class.

219. Plaintiff has suffered damages.

WHEREFORE, Plaintiff demands over $150,000.00 and the following relief from Defendant:

(a) Wages, employment benefits or other compensation denied or lost by such violation, including front wages; back pay including base wages, overtime, premium pay, differentials, bonuses, and value of lost benefits (including employer-paid health insurance premiums) from the date of termination to judgment, with pre- and post-judgment interest, and make-whole relief for pay disparity including retroactive adjustment to the higher comparator rate for all hours worked, with overtime recalculated at the corrected regular rate, for the relevant limitations period;

(b) Equitable relief such as reinstatement; reinstatement to Plaintiff's former position or a substantially equivalent position with the same seniority, benefits, and terms and conditions; or, in the alternative, front pay in an amount sufficient to make Plaintiff whole for loss of future earnings and benefits;

(c) Restoration of seniority, accruals, retirement service credit, and all other benefits as if continuously employed, or a monetary equivalent if restoration is infeasible, including payment of missed employer retirement contributions and lost vesting credit;

(d) Reasonable attorney's fees, litigation expenses, expert witness fees, and costs of suit, including non-taxable costs, as authorized by the PHRA;

(e) The employee's expert witness fee, if any;

(f) Compensatory damages for emotional pain, suffering, inconvenience, mental anguish, humiliation, and loss of enjoyment of life;

(g) Reimbursement or direct payment of COBRA premiums or equivalent medical insurance costs incurred due to loss of employment, plus out-of-pocket medical expenses caused by the interruption of coverage;

(h) A neutral reference limited to dates of employment and position, non-disparagement, and correction/withdrawal of adverse statements made to unemployment authorities;

(i) Make-whole relief calculated from the date of termination through the date of judgment (and, for front pay, for the court-determined period thereafter), less interim earnings consistent with mitigation principles, without offset for unemployment compensation unless required by law;

(j) An additional amount for the negative tax consequences of a lump-sum award pursuant to the Third Circuit's Eshelman doctrine, applied to back pay, front pay, and any lump-sum taxable components, including a tax-gross up;

(k) A declaration that Defendant's conduct violated the PHRA;

(l) Production of Plaintiff's complete personnel file and expungement of all discipline related to the asserted pretextual reasons;

(m) Pre-judgment interest from [date to be determined], and post-judgment interest at the legal rate;

(n) Other costs of the action, including taxable costs;

(o) And such other and further legal and equitable relief as the Court deems just and proper to fully make Plaintiff whole, including ancillary orders necessary to effectuate reinstatement and non-retaliation.

**COUNT XVII**

**HUGO JIMENEZ-SOLIS v.**
**TOWER HEALTH f/k/a THE READING HOSPITAL**

**VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT – RACE**

**RETALIATION**

220. Plaintiff realleges and incorporates the foregoing paragraphs as if they were set forth fully herein.

221. Plaintiff is in a protected class because of his race, Hispanic.

222. Plaintiff suffered adverse employment action(s) because he reported discrimination.

223. Plaintiff suffered adverse employment actions(s) because he opposed discrimination.

224. Plaintiff had a good-faith, reasonable belief that his conduct was protected activity.

225. There is a causal connection between the adverse employment action sustained by Plaintiff and his protected activity herein.

226. Plaintiff has suffered damages.

WHEREFORE, Plaintiff demands over $150,000.00 and the following relief from Defendant:

(a) Wages, employment benefits or other compensation denied or lost by such violation, including back pay and front pay, including base wages, overtime, premium pay, differentials, bonuses, and value of lost benefits (including employer-paid health insurance premiums) from the date of termination to judgment, with pre- and post-judgment interest, and make-whole relief for pay disparity including retroactive adjustment to the higher comparator rate for all hours worked, with overtime recalculated at the corrected regular rate, for the relevant limitations period;

(b) Equitable relief such as reinstatement; reinstatement to Plaintiff's former position or a substantially equivalent position with the same seniority, benefits, and terms and conditions; or, in the alternative, front pay in an amount sufficient to make Plaintiff whole for loss of future earnings and benefits;

(c) Restoration of seniority, accruals, retirement service credit, and all other benefits as if continuously employed, or a monetary equivalent if restoration is infeasible, including payment of missed employer retirement contributions and lost vesting credit;

(d) Reasonable attorney's fees, litigation expenses, expert witness fees, and costs of suit, including non-taxable costs, as authorized by the PHRA;

(e) The employee's expert witness fee, if any;

(f) Compensatory damages for emotional pain, suffering, inconvenience, mental anguish, humiliation, and loss of enjoyment of life;

(g) Reimbursement or direct payment of COBRA premiums or equivalent medical insurance costs incurred due to loss of employment, plus out-of-pocket medical expenses caused by the interruption of coverage;

(h) A neutral reference limited to dates of employment and position, non-disparagement, and correction/withdrawal of adverse statements made to unemployment authorities;

(i) Make-whole relief calculated from the date of termination through the date of judgment (and, for front pay, for the court-determined period thereafter), less interim earnings consistent with mitigation principles, without offset for unemployment compensation unless required by law;

(j) An additional amount for the tax consequences for an award in Plaintiff's favor under the Third Circuit's Eshelman doctrine. An additional amount for the negative tax consequences of a lump-sum award pursuant to the Third Circuit’s Eshelman doctrine, applied to back pay, front pay, and any lump-sum taxable components;

(k) A declaration that Defendant’s conduct violated the PHRA;

(l) Production of Plaintiff’s complete personnel file and expungement of all discipline related to the asserted pretextual reasons;

(m) Pre-judgment interest from [date to be determined], and post-judgment interest at the legal rate;

(n) Other costs of the action, including taxable costs;

(o) And such other and further legal and equitable relief as the Court deems just and proper to fully make Plaintiff whole, including ancillary orders necessary to effectuate reinstatement and non-retaliation.

## COUNT XVIII

## HUGO JIMENEZ-SOLIS v.
## TOWER HEALTH f/k/a THE READING HOSPITAL

## VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT – COLOR

## RETALIATION

227. Plaintiff realleges and incorporates the foregoing paragraphs as if they were set forth fully herein.

228. Plaintiff is in a protected class because of his color, black.

229. Plaintiff suffered adverse employment action(s) because he reported discrimination.

230. Plaintiff suffered adverse employment actions(s) because he opposed discrimination.

231. Plaintiff had a good-faith, reasonable belief that his conduct was protected activity.

232. There is a causal connection between the adverse employment action sustained by Plaintiff and his protected activity herein.

233. Plaintiff has suffered damages.

WHEREFORE, Plaintiff demands over $150,000.00 and the following relief from Defendant:

(a) Wages, employment benefits or other compensation denied or lost by such violation, including back pay and front pay, including base wages, overtime, premium pay, differentials, bonuses, and value of lost benefits (including employer-paid health insurance premiums) from the date of termination to judgment, with pre- and post-judgment interest, and make-whole relief for pay disparity including retroactive adjustment to the higher comparator rate for all hours worked, with overtime recalculated at the corrected regular rate, for the relevant limitations period;

(b) Equitable relief such as reinstatement; reinstatement to Plaintiff's former position or a substantially equivalent position with the same seniority, benefits, and terms and conditions; or, in the alternative, front pay in an amount sufficient to make Plaintiff whole for loss of future earnings and benefits;

(c) Restoration of seniority, accruals, retirement service credit, and all other benefits as if continuously employed, or a monetary equivalent if restoration is infeasible, including payment of missed employer retirement contributions and lost vesting credit;

(d) Reasonable attorney's fees, litigation expenses, expert witness fees, and costs of suit, including non-taxable costs, as authorized by the PHRA;

(e) The employee's expert witness fee, if any;

(f) Compensatory damages for emotional pain, suffering, inconvenience, mental anguish, humiliation, and loss of enjoyment of life;

(g) Reimbursement or direct payment of COBRA premiums or equivalent medical insurance costs incurred due to loss of employment, plus out-of-pocket medical expenses caused by the interruption of coverage;

(h) A neutral reference limited to dates of employment and position, non-disparagement, and correction/withdrawal of adverse statements made to unemployment authorities;

(i) Make-whole relief calculated from the date of termination through the date of judgment (and, for front pay, for the court-determined period thereafter), less interim earnings consistent with mitigation principles, without offset for unemployment compensation unless required by law;

(j) An additional amount for the tax consequences for an award in Plaintiff's favor under the Third Circuit's Eshelman doctrine. An additional amount for the negative tax consequences of a lump-sum award pursuant to the Third Circuit's Eshelman doctrine, applied to back pay, front pay, and any lump-sum taxable components;

(k) A declaration that Defendant's conduct violated the PHRA;

(l) Production of Plaintiff's complete personnel file and expungement of all discipline related to the asserted pretextual reasons;

(m) Pre-judgment interest from [date to be determined], and post-judgment interest at the legal rate;

(n) Other costs of the action, including taxable costs;

(o) And such other and further legal and equitable relief as the Court deems just and proper to fully make Plaintiff whole, including ancillary orders necessary to effectuate reinstatement and non-retaliation.

**COUNT XIX**

**HUGO JIMENEZ-SOLIS v.**
**TOWER HEALTH f/k/a THE READING HOSPITAL**

**VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT – NATIONAL ORIGIN**

**RETALIATION**

234. Plaintiff realleges and incorporates the foregoing paragraphs as if they were set forth fully herein.

235. Plaintiff is in a protected class because of his national origin, Colombia.

236. Plaintiff suffered adverse employment action(s) because he reported discrimination.

237. Plaintiff suffered adverse employment actions(s) because he opposed discrimination.

238. Plaintiff had a good-faith, reasonable belief that his conduct was protected activity.

239. There is a causal connection between the adverse employment action sustained by Plaintiff and his protected activity herein.

240. Plaintiff has suffered damages.

WHEREFORE, Plaintiff demands over $150,000.00 and the following relief from Defendant:

(a) Wages, employment benefits or other compensation denied or lost by such violation, including back pay and front pay, including base wages, overtime, premium pay, differentials, bonuses, and value of lost benefits (including employer-paid health insurance premiums) from the date of termination to judgment, with pre- and post-judgment interest, and make-whole relief for pay disparity including retroactive adjustment to the higher comparator rate for all hours worked, with overtime recalculated at the corrected regular rate, for the relevant limitations period;

(b) Equitable relief such as reinstatement; reinstatement to Plaintiff's former position or a substantially equivalent position with the same seniority, benefits, and terms and conditions; or, in the alternative, front pay in an amount sufficient to make Plaintiff whole for loss of future earnings and benefits;

(c) Restoration of seniority, accruals, retirement service credit, and all other benefits as if continuously employed, or a monetary equivalent if restoration is

infeasible, including payment of missed employer retirement contributions and lost vesting credit;

(d) Reasonable attorney's fees, litigation expenses, expert witness fees, and costs of suit, including non-taxable costs, as authorized by the PHRA;

(e) The employee's expert witness fee, if any;

(f) Compensatory damages for emotional pain, suffering, inconvenience, mental anguish, humiliation, and loss of enjoyment of life;

(g) Reimbursement or direct payment of COBRA premiums or equivalent medical insurance costs incurred due to loss of employment, plus out-of-pocket medical expenses caused by the interruption of coverage;

(h) A neutral reference limited to dates of employment and position, non-disparagement, and correction/withdrawal of adverse statements made to unemployment authorities;

(i) Make-whole relief calculated from the date of termination through the date of judgment (and, for front pay, for the court-determined period thereafter), less interim earnings consistent with mitigation principles, without offset for unemployment compensation unless required by law;

(j) An additional amount for the tax consequences for an award in Plaintiff's favor under the Third Circuit's Eshelman doctrine. An additional amount for the negative tax consequences of a lump-sum award pursuant to the Third Circuit's

Eshelman doctrine, applied to back pay, front pay, and any lump-sum taxable components;

(k) A declaration that Defendant's conduct violated the PHRA;

(l) Production of Plaintiff's complete personnel file and expungement of all discipline related to the asserted pretextual reasons;

(m) Pre-judgment interest from [date to be determined], and post-judgment interest at the legal rate;

(n) Other costs of the action, including taxable costs;

(o) And such other and further legal and equitable relief as the Court deems just and proper to fully make Plaintiff whole, including ancillary orders necessary to effectuate reinstatement and non-retaliation.

**COUNT XX**

**HUGO JIMENEZ-SOLIS v.**
**TOWER HEALTH f/k/a THE READING HOSPITAL**

**VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT – ETHNICITY**

**RETALIATION**

241. Plaintiff realleges and incorporates the foregoing paragraphs as if they were set forth fully herein.

242. Plaintiff is in a protected class because of his ethnicity, Afro-Colombian.

243. Plaintiff suffered adverse employment action(s) because he reported discrimination.

244. Plaintiff suffered adverse employment actions(s) because he opposed discrimination.

245. Plaintiff had a good-faith, reasonable belief that his conduct was protected activity.

246. There is a causal connection between the adverse employment action sustained by Plaintiff and his protected activity herein.

247. Plaintiff has suffered damages.

WHEREFORE, Plaintiff demands over $150,000.00 and the following relief from Defendant:

(a) Wages, employment benefits or other compensation denied or lost by such violation, including back pay and front pay, including base wages, overtime, premium pay, differentials, bonuses, and value of lost benefits (including employer-paid health insurance premiums) from the date of termination to judgment, with pre- and post-judgment interest, and make-whole relief for pay disparity including retroactive adjustment to the higher comparator rate for all hours worked, with overtime recalculated at the corrected regular rate, for the relevant limitations period;

(b) Equitable relief such as reinstatement; reinstatement to Plaintiff's former position or a substantially equivalent position with the same seniority, benefits, and

terms and conditions; or, in the alternative, front pay in an amount sufficient to make Plaintiff whole for loss of future earnings and benefits;

(c) Restoration of seniority, accruals, retirement service credit, and all other benefits as if continuously employed, or a monetary equivalent if restoration is infeasible, including payment of missed employer retirement contributions and lost vesting credit;

(d) Reasonable attorney's fees, litigation expenses, expert witness fees, and costs of suit, including non-taxable costs, as authorized by the PHRA;

(e) The employee's expert witness fee, if any;

(f) Compensatory damages for emotional pain, suffering, inconvenience, mental anguish, humiliation, and loss of enjoyment of life;

(g) Reimbursement or direct payment of COBRA premiums or equivalent medical insurance costs incurred due to loss of employment, plus out-of-pocket medical expenses caused by the interruption of coverage;

(h) A neutral reference limited to dates of employment and position, non-disparagement, and correction/withdrawal of adverse statements made to unemployment authorities;

(i) Make-whole relief calculated from the date of termination through the date of judgment (and, for front pay, for the court-determined period thereafter), less interim earnings consistent with mitigation principles, without offset for unemployment compensation unless required by law;

(j) An additional amount for the tax consequences for an award in Plaintiff's favor under the Third Circuit's Eshelman doctrine. An additional amount for the negative tax consequences of a lump-sum award pursuant to the Third Circuit's Eshelman doctrine, applied to back pay, front pay, and any lump-sum taxable components;

(k) A declaration that Defendant's conduct violated the PHRA;

(l) Production of Plaintiff's complete personnel file and expungement of all discipline related to the asserted pretextual reasons;

(m) Pre-judgment interest from [date to be determined], and post-judgment interest at the legal rate;

(n) Other costs of the action, including taxable costs;

(o) And such other and further legal and equitable relief as the Court deems just and proper to fully make Plaintiff whole, including ancillary orders necessary to effectuate reinstatement and non-retaliation.

**COUNT XXI**

**HUGO JIMENEZ-SOLIS v.**
**TOWER HEALTH f/k/a THE READING HOSPITAL**

**VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT**

**AGE DISCRIMINATION**

248. Plaintiff realleges and incorporates the foregoing paragraphs as if they were set forth fully herein.

249. Plaintiff is in a protected class because of his age, 53 years old, at the time of his termination.

250. Plaintiff was terminated because of his age or was treated differently or disparately by Defendant from similarly-situated younger individuals, including but not limited to, those who are not in a protected age class.

251. Plaintiff suffered adverse employment action(s) by Defendant because of his age, including being terminated.

252. Plaintiff has suffered damages caused by Defendant.

253. Plaintiff is entitled to liquidated damages.

WHEREFORE, Plaintiff demands over $150,000.00 and the following relief from Defendant:

(a) Wages, employment benefits or other compensation denied or lost by such violation, including back pay and front pay, including base wages, overtime, premium pay, differentials, bonuses, and value of lost benefits (including employer-paid health insurance premiums) from the date of termination to judgment, with pre- and post-judgment interest, and make-whole relief for pay disparity including retroactive adjustment to the higher comparator rate for all hours worked, with overtime recalculated at the corrected regular rate, for the relevant limitations period;

(b) Equitable relief such as reinstatement; reinstatement to Plaintiff's former position or a substantially equivalent position with the same seniority, benefits, and

terms and conditions; or, in the alternative, front pay in an amount sufficient to make Plaintiff whole for loss of future earnings and benefits;

(c) Restoration of seniority, accruals, retirement service credit, and all other benefits as if continuously employed, or a monetary equivalent if restoration is infeasible, including payment of missed employer retirement contributions and lost vesting credit;

(d) Reasonable attorney's fees, litigation expenses, and costs of suit, as authority the ADEA, together with such other and further relief as this Court deems just and proper;

(e) Compensatory damages for emotional pain, suffering, inconvenience, mental anguish, humiliation, and loss of enjoyment of life;

(f) Liquidated damages in an amount equal to all lost wages and benefits, as authorized by 29 U.S.C. § 626(b), resulting from Defendant's willful violations of the ADEA, which were perpetrated, ratified, or consciously disregarded by Defendant's supervisors, managers, and human resources officials;

(g) Reimbursement or direct payment of COBRA premiums or equivalent medical insurance costs incurred due to loss of employment, plus out-of-pocket medical expenses caused by the interruption of coverage;

(h) A neutral reference limited to dates of employment and position, non-disparagement, and correction/withdrawal of adverse statements made to unemployment authorities;

(i) An additional amount for the tax consequences for an award in Plaintiff's favor under the Third Circuit's Eshelman doctrine. An additional amount for the negative tax consequences of a lump-sum award pursuant to the Third Circuit's Eshelman doctrine, applied to back pay, front pay, and any lump-sum taxable components;

(j) A declaration that Defendant's conduct violated the ADEA;

(k) Production of Plaintiff's complete personnel file and expungement of all discipline related to the asserted pretextual reasons;

(l) Pre-judgment interest from [date to be determined], and post-judgment interest at the legal rate;

(m) Other costs of the action, including taxable costs;

(n) And such other and further legal and equitable relief as the Court deems just and proper to fully make Plaintiff whole, including ancillary orders necessary to effectuate reinstatement and non-retaliation.

## COUNT XXII

## HUGO JIMENEZ-SOLIS v.
## TOWER HEALTH f/k/a THE READING HOSPITAL

## VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT

## AGE DISCRIMINATION

254. Plaintiff realleges and incorporates the foregoing paragraphs as if they were set forth fully herein.

255. Plaintiff is in a protected class because of his age, being 53 years old at the time of his termination.

256. Plaintiff was terminated because of his age or was treated differently or disparately by Defendant from similarly-situated younger individuals, including but not limited to, those who are not in a protected age class.

257. Plaintiff suffered adverse employment action(s) by Defendant because of his age, including being terminated.

258. Plaintiff has suffered damages caused by Defendant.

WHEREFORE, Plaintiff demands over $150,000.00 and the following relief from Defendant:

(a) Wages, employment benefits or other compensation denied or lost by such violation, including front wages; Back pay including base wages, overtime, premium pay, differentials, bonuses, and value of lost benefits (including employer-paid health insurance premiums) from the date of termination to judgment, with pre- and post-judgment interest, and make-whole relief for pay disparity including retroactive adjustment to the higher comparator rate for all hours worked, with overtime recalculated at the corrected regular rate, for the relevant limitations period;

(b) Equitable relief such as reinstatement; reinstatement to Plaintiff's former position or a substantially equivalent position with the same seniority, benefits, and terms and conditions; or, in the alternative, front pay in an amount sufficient to make Plaintiff whole for loss of future earnings and benefits;

(c) Restoration of seniority, accruals, retirement service credit, and all other benefits as if continuously employed, or a monetary equivalent if restoration is infeasible, including payment of missed employer retirement contributions and lost vesting credit;

(d) Reasonable attorney’s fees, litigation expenses, expert witness fees, and costs of suit, including non-taxable costs, as authorized by the PHRA;

(e) The employee's expert witness fee, if any;

(f) Compensatory damages for emotional pain, suffering, inconvenience, mental anguish, humiliation, and loss of enjoyment of life;

(g) Reimbursement or direct payment of COBRA premiums or equivalent medical insurance costs incurred due to loss of employment, plus out-of-pocket medical expenses caused by the interruption of coverage;

(h) A neutral reference limited to dates of employment and position, non-disparagement, and correction/withdrawal of adverse statements made to unemployment authorities;

(i) Make-whole relief calculated from the date of termination through the date of judgment (and, for front pay, for the court-determined period thereafter), less interim earnings consistent with mitigation principles, without offset for unemployment compensation unless required by law;

(j) An additional amount for the tax consequences for an award in Plaintiff's favor under the Third Circuit's Eshelman doctrine. An additional amount for the

negative tax consequences of a lump-sum award pursuant to the Third Circuit's Eshelman doctrine, applied to back pay, front pay, and any lump-sum taxable components;

(k) A declaration that Defendant's conduct violated the PHRA;

(l) Production of Plaintiff's complete personnel file and expungement of all discipline related to the asserted pretextual reasons;

(m) Pre-judgment interest from [date to be determined], and post-judgment interest at the legal rate;

(n) Other costs of the action, including taxable costs;

(o) And such other and further legal and equitable relief as the Court deems just and proper to fully make Plaintiff whole, including ancillary orders necessary to effectuate reinstatement and non-retaliation.

Respectfully submitted,

Date: __October 12, 2026__

BY:__*/s/ Edward C. Sweeney*______

Edward C. Sweeney, Esquire
Attorney for Plaintiff
I.D. No. 64565
Wusinich, Sweeney & Ryan, LLC
102 Pickering Way, Suite 403
Exton, PA 19341
(610) 594-1600
Validation of signature code: ECS1942